ALTENBERND, Judge.
 

 Jacqueline Hill appeals a final summary judgment entered in favor of State Farm Florida Insurance Company (“State Farm”). Her lawsuit concerns fire damage to her home that occurred in February 2005. Although the basic insurance claim was resolved by appraisal between the parties in April 2006, a procedurally complex lawsuit alleging breach of contract remains pending. The final summary judgment was entered based on the law of
 
 *958
 
 this district as it existed before we issued our decisions in
 
 Goff v. State Farm Florida Insurance Co.,
 
 999 So.2d 684 (Fla. 2d DCA 2008), and
 
 Clifton v. United Casualty Insurance Co.,
 
 31 So.3d 826 (Fla. 2d DCA 2010). Although the trial court may very well have reached the correct outcome in this case, we conclude that its legal analysis is inconsistent with our more recent cases. Accordingly, we reverse the final summary judgment and remand the case for a renewed determination of whether Ms. Hill filed her lawsuit in good faith in order to force State Farm to adjust the claim or whether she filed suit merely as an effort to seek attorneys’ fees for the normal process of adjusting the claim. If she filed her lawsuit in good faith in order to force State Farm to adjust the claim, then she is entitled to attorney’s fees. If not, then State Farm is not liable for the attorney’s fees she incurred as a result of filing suit.
 

 I. Round One: The Fire, the Claims Adjustment Process, and the First Final Judgment
 

 Ms. Hill had a fire at her insured residence on February 16, 2005. State Farm had a contractor board up the residence that same day. State Farm also had a contractor, whom it regards as an independent contractor but whom Ms. Hill views as an agent of State Farm, provide an initial estimate of repairs within a week of the fire. State Farm then assisted Ms. Hill in moving into an apartment on March 2.
 

 Ms. Hill believed that the contractor improperly discarded some of her personal property in early March. She also had problems with an adjuster who indicated that some upgrades to her house and other expenses would not be paid by State Farm. However, by early May, the adjuster’s supervisor had assured Ms. Hill that the adjuster was mistaken and that the items were covered under the policy.
 

 In mid-May, Ms. Hill retained a public adjuster and fired the contractor. As a result, repairs to the home stopped at least temporarily. State Farm continued to work with the public adjuster on this claim and, for example, paid $28,000 for dwelling damage in late June 2005. The parties had at least a small disagreement about $455 in damage to a chainlink fence. By late August, State Farm appears to have paid more than $90,000 on this claim under its various coverages. It did take the position that $1095 of its payments had been overpayments, for which it was not then asking for a refund.
 

 On September 22, 2005, State Farm received a letter of representation from an attorney representing Ms. Hill and a “courtesy copy” of a complaint that the attorney had already filed. At least from this record, it appears that the letter enclosing the already filed lawsuit may have been the attorney’s first contact with State Farm.
 

 State Farm responded to the lawsuit in mid-November and immediately sought to stay discovery pending an appraisal pursuant to the appraisal provision in the contract. In early January 2006, Ms. Hill also asked the court to compel appraisal, arguing in strong rhetoric that State Farm had been dilatory in commencing appraisal. On January 4, 2006, the trial court granted State Farm’s motion to stay discovery pending appraisal. It granted Ms. Hill’s motion to compel arbitration on January 23, which included appraisal of the chain-link fence, but the trial court denied sanctions in that order.
 

 On April 3, 2006, the three appraisers returned an award in favor of Ms. Hill of approximately $160,000. This included about $120,000 in coverage that had already been paid. Thus, State Farm promptly sent checks totaling $39,967.60 to satisfy the amount remaining unpaid under
 
 *959
 
 the insurance coverage. A few days later, Ms. Hill filed both an amended complaint for breach of contract and a motion to confirm the appraisal award.
 

 In October 2006, the trial court entered a “final judgment” that confirmed the appraisers’ award totaling $39,967.60. It appears undisputed that this amount had already been paid to Ms. Hill in April. The order reserved jurisdiction to determine entitlement and amount of attorneys’ fees and costs.
 

 II. Round Two: The Second Final Judgment and the Appeal
 

 Normally, a final judgment is near the end of a record on appeal. The above-referenced final judgment is in volume five of the record and it is followed by nineteen additional volumes of litigation. This court probably lacks the ability or stamina to explain fully the remainder of the record. However, at least one source of the extensive record seems clear.
 

 Both Ms. Hill’s initial complaint and the amended complaint attempted to allege a breach of the insurance contract. Both pleadings complained about the initial contractor and the adjuster and suggest that State Farm was “lowballing” the claim. However, these pleadings are vague about the nature of the breach of contract and the resulting damages. Both parties immediately sought appraisal after the lawsuit was filed. At least in general terms, appraisal is not a process to resolve a breach of contract claim or even to determine a coverage dispute. Appraisal is a method of adjusting a claim within the terms of the insurance contract to determine the amount payable for the covered claim. Thus, in this case, after the appraisal process was finished and Ms. Hill had been paid the remaining $39,967.60, her attorneys never really identified a loss that had not been covered in the adjusting process or any aspect of the appraisal procedure that had been improper. In other words, once the appraisal was concluded, Ms. Hill does not appear to have ever had a remaining claim for breach of contract that she could articulate.
 

 Despite the “final judgment” confirming the appraisal, the trial court still had a lawsuit pending for breach of contract. In March 2007, the trial court entered an order granting summary judgment against Ms. Hill on the remaining claim for breach of contract. Ms. Hill appealed that order, which was assigned case number 2D07-2311. This court issues this opinion in that appeal, but we must explain several intervening matters.
 

 When this court received the notice of appeal in 2007, we noticed two potential problems with the appeal. First, the order granting summary judgment was a nonfinal order; therefore, it was not ap-pealable.
 
 See, e.g., Better Gov’t Ass’n of Sarasota County, Inc. v. State,
 
 802 So.2d 414, 415 (Fla. 2d DCA 2001) (holding that an order merely granting a motion for summary judgment is not appealable because “it lacks the finality of an order entering judgment in favor of a party and against the party opponent”). This court recognized that the error could be corrected if the trial court could render a summary final judgment in accordance with the order granting summary judgment. Second, this court had not yet received a full record, but we did have a copy of the earlier “final judgment.” From our limited record, we did not understand how the trial court had jurisdiction to enter an order granting summary judgment after it had already entered a final judgment. Thus, we relinquished jurisdiction of the case to the trial court to address these issues.
 

 After this court relinquished jurisdiction, the trial court decided that it could not enter a summary judgment after it had already entered a final judgment. Thus, it concluded that the order granting sum
 
 *960
 
 mary judgment was void. The order that the trial court entered on that relinquishment resulted in a separate appellate proceeding — case no. 2D08^0. In that case, we reversed the trial court and held that the final judgment concerning the appraisal did not preclude the trial court from addressing the lawsuit for breach of contract.
 
 See State Farm Fla. Ins. Co. v. Hill,
 
 1 So.3d 1272 (Fla. 2d DCA 2009).
 

 When the case returned to the trial court, it entered a final judgment on May 11, 2009, that essentially transformed its earlier order granting summary judgment in March 2007 into a summary final judgment. The May 11, 2009, final judgment is the order pending on appeal in this case, but it is pending in a case that originated in this court in 2007. The order for all practical purposes was entered in accordance with the law in 2007.
 

 III. Analysis: The Issue on Appeal Turns to
 
 Goff.
 

 Given that the trial court granted a summary judgment on a claim of breach of contract, one might expect the issue on appeal to be whether there was a question of fact about some alleged breach of the insurance contract by State Farm. However, that is not the direction this appeal has taken. Instead, the issue has become whether the final judgment confirming the previously paid insurance appraisal is a confession of judgment or otherwise an event that entitles Ms. Hill to a judgment to receive an award of attorneys’ fees.
 

 In
 
 Goff,
 
 this court considered an appeal with some similarities to this case. 999 So.2d 684. The parties were in an ongoing claims dispute when the Goffs sued State Farm, and the matter was immediately referred to appraisal.
 
 Id.
 
 at 686. We held that the Goffs were entitled to an award of attorneys’ fees because the lawsuit “forced” State Farm to request an appraisal and to pay significant additional amounts.
 
 Id.
 
 at 688.
 

 It is apparent that some lawyers have read more into
 
 Goff
 
 than this court intended. Adjusting and settling property claims under insurance policies is never an easy process. It requires a level of good faith and cooperation from all parties. The law does not provide any general mechanism to impose attorneys’ fees against one party or the other merely because the negotiation process is difficult. It is only when the claims adjusting process breaks down and the parties are no longer working to resolve the claim within the contract, but are actually taking steps that breach the contract, that the insured may be entitled to an award fees under section 627.428, Florida Statutes (2004).
 
 See, e.g., Lewis v. Universal Prop. & Cas. Ins. Co.,
 
 13 So.3d 1079, 1081 (Fla. 4th DCA 2009) (stating that the underlying rationale of awarding attorneys’ fees under section 627.428 is the notion that the insureds filed suit “to resolve a legitimate dispute” and not simply to collect attorneys’ fees).
 

 The line between rigorous negotiations and breach of contract is undoubtedly difficult to describe and it is a determination that is fact intensive. This court recently expanded on this issue in reversing a summary judgment in
 
 Clifton.
 
 31 So.3d at 830 (holding that summary judgment in favor of the insurer is improper when there was a “bona fide” dispute between the parties that prompted the insured to sue). From the record in this appeal, we question whether this lawsuit was filed to force State Farm to conduct an appraisal or whether it was merely a preemptive lawsuit intended to obtain attorneys’ fees for the usual efforts in negotiating an insurance claim. The trial court, however, did not decide this case based on our recent decisions and, thus, none of the parties addressed the issue of whether Ms. Hill needed to file this lawsuit to force State Farm to comply with its contract. Be
 
 *961
 
 cause this issue was not considered at the hearing on the motion for summary judgment, it is not appropriate for this court to base its decision on those cases. Instead, we reverse and remand the case to the trial court to determine whether Ms. Hill may be entitled to fees under the reasoning in
 
 Goff
 
 and
 
 Clifton.
 
 In all other respects, we affirm the judgment on appeal.
 

 On remand, if the trial court determines that Ms. Hill is entitled to an award of attorneys’ fees, we observe that the scope of the remedy we envisioned in
 
 Goff
 
 has clearly been misconstrued by Ms. Hill’s attorneys in this case. The fees we envisioned in
 
 Goff
 
 were the fees necessary to force State Farm back to the negotiations table to resolve the dispute within the terms of the insurance contract. The appraisal process, for example, is not legal work arising from an insurance company’s denial of coverage or breach of contract; it is simply work done within the terms of the contract to resolve the claim. Thus, except under the most extraordinary of circumstances, we do not envision fees for such work to be recoverable under the rule announced in
 
 Goff.
 
 Instead, the fees should normally be limited to the work associated with filing the lawsuit after the insurance carrier has ceased to negotiate or has breached the contract and the additional legal work necessary and reasonable to resolve the breach of contract.
 

 Reversed and remanded.
 

 KELLY, J„ and FULMER, CAROLYN K., Senior Judge, Concur.